WILLIAM WILLIAMS *v.* HENRY CONNOWAY.

The property or ownership of the vendor in an article sold at public sale with the conditions thereof duly advertised and posted at the place of sale, will not be divested without a compliance with the conditions of sale, or with an agreement afterward made with the vendor in regard to them, in good faith by the purchaser, who knew the conditions of the sale, by the seizure of it in his possession under an execution against him. And in an action of replevin by the vendor against the constable seizing it, the purchaser will be a competent witness for the plaintiff.

ACTION of replevin for a horse. Williams, the plaintiff, had exposed among other goods of his, the horse in question, to public sale duly advertized with the conditions published and posted at the place of sale, as to the terms of payment for articles to be purchased at it; one of which was that on all sums of ten dollars or more, a credit of ten months would be allowed on the purchaser's giving his judgment note with approved security for the amount; and nothing sold to be removed from his premises without first complying with the conditions of the sale, at which James Hitch became the purchaser of the horse, and took it away without the consent of the plaintiff and without complying with the conditions of sale, but returned the next morning to the plaintiff's with the same and another horse hitched to his carriage,

and applied to him to take his note for the price without security, which the plaintiff declined to do; after some solicitation, however, he obtained his consent to drive on down to Bridgeville, where he assured him he could obtain the necessary security, and named two or three responsible persons living there, either of whom would enter security for him; but whilst there, Connoway, the defendant, who was a constable and had an execution against him, levied upon the horse and took it into his custody. The defendant was aware, however, that he had bought the horse at the plaintiff's sale, and had not paid or given security for it, in compliance with the conditions of it.

On the trial James Hitch was called to the stand as a witness, by *Layton*, for the plaintiff.

*Moore, for the defendant*, objected to his competency because he was the purchaser of the horse in question at the sale of the plaintiff, and, if not a party to the suit, he was at least, interested in the result of the present action.

*Layton.* He is not a party to the action, and in contemplation of the law, could have no interest whatever in the result of it.

*By the Court.* He is not an incompetent witness for any reason that has thus far been disclosed in the case. So far as he may have any interest in the matter as now appears, it must be measured by the value of the horse; and it is the same either way, for if the plaintiff succeeds in the suit, it pays him what he would otherwise owe him for it, and if he does not, he will be entitled to the credit of so much levied and paid on the execution in the defendant's hands. The objection was overruled.

He then testified that he bought the horse at the plaintiff's sale, but at the time he had not seen and did not know the conditions of the vendue, but drove over the next morning to the plaintiff's house to see him about the matter, when he consented to his driving down to Bridgeville to get security, and that he had only just got down there with his

wagon and horses hitched to it, when Connoway, who had an execution against him, took the horse into his possession as constable ; and that he told him the horse was not his, and that he had not given security to Mr. Williams f .r it.

*Moore*, on the conclusion of the testimony for the plaintiff, submitted a motion for a non-suit, first upon the ground that it appeared from the evidence already before the court, that although the conditions of sale had not been complied with, it was in the power and discretion of the plaintiff after the sale, to waive or dispense with them, and that he afterward voluntarily permitted Hitch to take the horse away from his premises without complying with the conditions, and that he consequently had not such a property in, or possession of the horse, at the time when the defendant seized it under the execution, as would entitle him to maintain the action; and secondly, upon the ground that it did not constitute an unlawful taking from the possession of the plaintiff under the facts and circumstances proved, nor could he maintain an action for the wrongful detention of it either, because there had been no notice whatever of a demand and refusal ; that is to say, of a demand by the plaintiff, and a refusal by the defendant to deliver the horse prior to the commencement of the action. 2 *Greenl. Ev. sec.* 563, 2 *Selw. N. P.* 97.

*Layton.* Neither the property of the plaintiff in, nor his possession of, the horse, was divested in law by such a sham and pretended and fraudulent purchase of it, as had been proved in this case, even by the purchaser himself. It was done at a public sale, or vendue, and all such sales or auctions were considered even in the law to be cash sales, and no purchaser at such a sale could acquire any legal right or title whatever to the goods purchased until he had complied in good faith with all the terms and conditions of the sale. *Hil. on Sales, sec.* 463. 3 *Esp. Rep.* 271. And printed

9

or written terms and conditions of a public sale, posted up, constitute constructive notice to everybody.

*The Court* overruled the motion for a non-suit.

When the evidence closed, *Moore* inquired of the Court, as he relied solely on the plea of property in James Hitch, and it imposed on the defendant the onus of establishing that defence, if he had not the right to open and conclude the case before the jury, and cited 2 *Saund. Pl. & Ev.* 793. *Colstone v. Hiscolbs*, 1 *Moo. & Ry.* 301.

*But the Court* replied that he had not, and said the Court of Errors and Appeals had ruled that in an action of replevin, the plea of property in the defendant when it is traversed, as in this case, by the replication of the plaintiff, presents an issue on the plaintiff's claim of property in the goods in question, and imposes on him the onus of establishing such claim. *McIlvain's Admr. v. Holland et al.* 5 *Harr.* 226. And it would seem the same should be the law when the plea is property in another.

*The Court, Gilpin C. J., charged the jury :* That the only question in the case to be considered and decided by them, was the question who was the owner of the horse, or in whom was the property in the horse vested, when the defendant seized and levied upon it and took it into his possession as a constable. The plaintiff claims and asserts that it then belonged to him, and that it was wrongfully and tortiously taken from him by the defendant, whilst the defendant, on the other hand, claims and contends that it then belonged to James Hitch, and that being a constable and having an execution in his hands as such against him, he seized the horse in execution and took it into his possession, as he had a right and was legally bound to do. Under such an issue joined in the pleadings and presented to the jury for their decision in the trial of the action, it was incumbent upon the plaintiff to show to the satisfaction of the court and jury that he has the right of property in the

horse in question and claimed by him, and is entitled to the possession of it, or he cannot recover in the action. The evidence in the case was all before the jury and upon it, he presumed, there could be no doubt or question that on the day of the public sale or vendue spoken of, and before it began, the horse in question was the property of the plaintiff, and was sold as his property and was struck off to James Hitch, he being the highest bidder for it at the price of one hundred dollars. Whether that right of property was divested by the striking off the horse to Hitch and the facts and circumstances stated by the witnesses in regard to the matter, would depend on the instructions which the court had to give them upon the legal effect of such evidence. If there were published conditions of the vendue or sale then posted at the place of it in public view, and one of those conditions in effect was that on all sums bid as high as ten dollars, or over that amount, a credit of ten months would be given the purchaser on his giving his judgment note with approved security for the payment of the same, and that nothing bought was to be removed from the premises without complying with the conditions of the sale, and Hitch removed the horse from the premises without complying with those conditions, but returned the following morning with it to the plaintiff's residence and was informed that he had not complied with the conditions of the sale by giving his judgment note with approved security to the plaintiff for the price bid for it by him, and he then offered to give the plaintiff his judgment note without security for the price of it, but the latter declined to accept it, and then at his instance and request the plaintiff consented that he should drive the horse with his own hitched to his carriage to Bridgeville to get a good and sufficient surety to join with him in such a note, and with that understanding and agreement between them, the plaintiff permitted him to drive the horse there for that purpose, then in the opinion of the court, there could be nothing in the transactions or facts thus hypothetically and particularly detailed and stated, nor in such a consent and

agreement on the part of the plaintiff, which could have had the effect in law to divest the right of property and ownership of the plaintiff in the horse, until the conditions of that agreement had been complied with and performed in good faith on his part. Because so long as that agreement remained unperformed on his part, he could in such a case, have had but a special property for the time in the horse, and could have been but the bailee of it, and which whilst consistent with, would have been entirely subordinate to, the superior and absolute property and ownership of the plaintiff in it. And if the jury were satisfied from the evidence that such were the facts of the case, and that before such agreement had been performed by Hitch in good faith, the defendant as a constable seized and took the horse out of his possession by virtue of the execution then in his hands against Hitch, it would constitute such a wrongful taking of the property of the plaintiff under the circumstances, as would entitle him to recover in this action, and their verdict should accordingly be in his favor. And if so, that it should be for nominal damages merely, as the horse was replevied and delivered to him under the writ; but if they were not so satisfied, their verdict should be in favor of the defendant, with damages to the amount of the value of the horse.